**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Harold H. G. Edwards, Civil No. 00-2416 (DWF/AJB)

Plaintiff,

v.

**MEMORANDUM OPINION AND ORDER**

Culbertson Law Offices, and Richard David Smith,

Defendants.

---

Harold H. G. Edwards, 2307 Colfax Avenue South #5, Minneapolis, MN 55405, appeared as Plaintiff *pro se.*

Thomas Kayser, Esq., Robins Kaplan Miller & Ciresi, 2800 LaSalle Plaza, 800 LaSalle Avenue, Minneapolis, MN 55402-2015, appeared on behalf of Defendant Culbertson Law Offices.

---

**Introduction**

The above-entitled matter came on for hearing before the undersigned United States District Judge on December 7, 2001, pursuant to Plaintiff's motion for entry of default judgment against Defendants Culbertson Law Offices[1] and Richard David Smith. In the Complaint, Plaintiff alleges violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"),

[1] Attorney David Culbertson has submitted a response to this default motion on behalf of Defendant Culbertson Law Offices. Plaintiff objects to this response on the grounds that it is untimely and that Mr. Culbertson, who has been dismissed from this action, has no standing in this litigation. The Court does not necessarily agree with Plaintiff's contention that Mr. Culbertson's response should be disregarded. Timeliness is less of a concern in the context of a default motion, and Mr. Culbertson's memorandum was submitted not on his own behalf, but on behalf of Culbertson Law Offices (although he contends that Culbertson Law Offices does not exist as a legal entity). However, the Court need not consider the brief filed by Mr. Culbertson and to which Mr. Edwards takes exception; the Court would have reached the same conclusion on its own volition.

DEC 07 2001
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD DEC 07 2001
DEPUTY CLERK

18 U.S.C. § 1962, *et seq.*, and a variety of Ohio statutory and common law claims. For the reasons set forth below, Plaintiff's motion is denied.

**Background**

This litigation has its genesis in a long and somewhat sordid story. Mr. Edwards' father, Norman Edwards, died in Akron, Ohio, in December of 1995. Mr. Edwards and his mother were the beneficiaries of Norman Edwards' will.

David Culbertson is an attorney in Akron, Ohio. Mr. Culbertson operates his legal practice under the name "Culbertson Law Offices."[2] Mr. Culbertson was the executor of Norman Edwards' estate.

Before he died, Norman Edwards lived with Robert Maltbie in a house ("the Pitkin Avenue house") owned by Mr. Maltbie. Norman Edwards and Mr. Maltbie employed a woman by the name of Deborah Ann Deisz to perform cooking, cleaning, and other errands for the household.

According to the Complaint, Norman Edwards paid all of the utilities for the Pitkin Avenue house, occasionally paid the property taxes, paid $613.67 for new appliances and furniture, and paid $11,033 for improvements or additions to the Pitkin Avenue house. Furthermore, according to the Complaint, Norman Edwards loaned Ms. Deisz a total of $10,211.00.

---

[2] The legal status of Culbertson Law Offices is unknown. The record indicates that Mr. Culbertson's wife also practices law out of the Culbertson Law Offices, but, as mentioned in note 1, Mr. Culbertson has submitted sworn testimony to the fact that Culbertson Law Offices does not legally exist, but is merely a name used by Mr. Culbertson and his wife as solo practitioners. The Court need not reach the issue of whether Culbertson Law Offices is an entity which may be sued in a court of law because, even assuming that it is, this Court lacks jurisdiction over it.

Shortly after Norman Edwards died, Mr. Maltbie began making claims on the estate of Norman Edwards ("the Edwards estate"). Mr. Maltbie represented to Mr. Edwards that he was represented by Mr. Culbertson. According to the Complaint, Mr. Maltbie, his sister Idell Hollis, and/or Ms. Deisz illegally took possession of an unknown sum of cash belonging to the Edwards estate and sold a number of books belonging to the estate (for a sum of $125). Mr. Edwards asserts that, in violation of his fiduciary responsibilities, Mr. Culbertson never sought to recover these assets on behalf of the Edwards estate.

In January of 1996, Mr. Maltbie died. Mr. Culbertson was the executor of Mr. Maltbie's estate ("the Maltbie estate"). According to the Complaint, Mr. Culbertson's simultaneous executorships of the Maltbie and Edwards estates amounted to a conflict of interest because the Maltbie estate owed the Edwards estate significant sums for the sale of the books, the unspecified amount of cash, and the improvements made to the Pitkin Avenue house. Mr. Culbertson never disclosed the potential conflict to the Summit County Probate Court.

Shortly after Mr. Maltbie's death, his sister, Idell Hollis, made a claim against the Edwards estate for $2,000. Ms. Hollis alleged that she had performed cooking and cleaning for Norman Edwards and that she had helped clean and box up Norman Edwards' belongings. Mr. Edwards denies that Ms. Hollis ever performed such services and asserts that, if she did, they were for the benefit of her brother and not Norman Edwards. In a phone conversation with Mr. Edwards, Ms. Hollis allegedly indicated that she, too, was represented by Mr. Culbertson. Ultimately, Mr. Culbertson disbursed $500 from the Edwards estate to Ms. Hollis, but Ms. Hollis returned this money after Mr. Edwards confronted Ms. Hollis about the sale of Norman Edwards' books.

When Mr. Maltbie died, he left a will which designated David and Patricia Gossett ("the Gossetts") as inheritors of his real property–the Pitkin Avenue house–and Ms. Deisz as the inheritor of all of his personal property. The Gossetts determined that Mr. Maltbie would have wanted Ms. Deisz to inherit the Pitkin Avenue house and that Mr. Maltbie simply had not changed his will to reflect his true intent. Accordingly, the Gossetts determined that they should gift the Pitkin Avenue house to Ms. Deisz.[3]

At that time, Ms. Deisz was in the process of filing for bankruptcy. According to Mr. Edwards, Mr. Culbertson represented Ms. Deisz in her bankruptcy proceeding. Ms. Deisz did not identify either her interest in Mr. Maltbie's personal property or her contingent interest in Mr. Maltbie's real property in her bankruptcy application. Furthermore, according to the Complaint, in order to shield the Pitkin Avenue house from the bankruptcy proceeding, Mr. Culbertson arranged to have the Gossetts sell the Pitkin Avenue house to Defendant Richard David Smith (Ms. Deisz's brother) for $10. Finally, the bankruptcy petition failed to list the Edwards estate as a creditor, despite the fact, alleged in the Complaint, that Norman Edwards had loaned Ms. Deisz over $10,000.

Over the course of his executorship of the Edwards estate, Mr. Culbertson requested that Mr. Edwards and his mother execute affidavits authorizing the release of $1,800 from the Edwards estate for attorney's fees. Mr. Edwards now asserts that, under Ohio law, Mr. Culbertson was entitled to 4% of the Edwards estate, that he was not entitled to any additional fee for serving as executor, that he did not perform any services for the Edwards estate

---

[3] Apparently, Ms. Deisz already had a contingent interest in the house; she was to inherit the house if the Gossetts did not take it.

beyond the normal functions of an executor, and that he has repeatedly refused to present a record of his services when requested to do so.

Mr. Edwards filed this action in October of 2000. He alleged that Mr. Culbertson, the Culbertson Law Offices, and/or Mr. Smith have violated RICO, committed fraud, breached contracts, converted property, and engaged in deceptive trade practices.

On December 11, 2000, the Clerk of Court entered a default against Culbertson Law Offices. On December 22, 2000, the Clerk of Court entered a default against Mr. Smith.

On February 7, 2001, Mr. Culbertson–through an attorney–brought a motion to dismiss for lack of personal jurisdiction. That motion was referred to Magistrate Judge Arthur J. Boylan. On May 7, 2001, the Court adopted the report and recommendation of Magistrate Judge Boylan, and the claims against Mr. Culbertson, individually, were dismissed without prejudice because the Court lacked personal jurisdiction over Mr. Culbertson.

Mr. Edwards now seeks entry of default judgment against Culbertson Law Offices and Mr. Smith. Mr. Edwards requests that the Court enter judgment against Mr. Smith in the amount of $16,549.50, enter judgment against Culbertson Law Offices in the amount of $39,459.59, award Mr. Edwards his costs, and enjoin Culbertson Law Offices from engaging in deceptive trade practices including false billing.

**Discussion**

Rule 55(b)(2) of the Federal Rules of Civil Procedure provides that the Court may enter judgment against a party if the party has failed to plead or otherwise defend against a properly pled claim. Generally, if a party is in default and default judgment against the party is requested, the Court must take all well-pled facts in the Complaint as true. *See generally, Thomson v. Wooster*, 114 U.S. 104, 110 (1885). "Even after default, however, it remains for the court to

consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." 10A *Federal Prac. & Proc.* Civil 3rd § 2688 at 63.

One prerequisite for entry of default judgment is that the Court have jurisdiction over both the subject matter and the person. *See, id.* at § 2682 at 14. In the case at bar, the Complaint does not allege facts which would support a finding of personal jurisdiction over either Culbertson Law Offices or Mr. Smith. Ultimately, a plaintiff seeking to assert a claim against a defendant and requesting that the Court exercise jurisdiction over that defendant bears the burden of establishing at least a *prima facie* case of personal jurisdiction. *See Scullin Steel Co. v. National Ry. Utilization Corp.*, 676 F.2d 309 (8th Cir. 1982); *Tol-O-Matic, Inc. v. Proma Produkt-Und Marketing Gesellschaft, m.b.H.*, 690 F. Supp. 798, 800 (D. Minn. 1987). The record here does not support such a showing.

First, with respect to Culbertson Law Offices, the Complaint alleges that Culbertson Law Offices acted only by and through Mr. Culbertson. The Court has already concluded, after briefing by the parties and a hearing, that it lacks personal jurisdiction over Mr. Culbertson. If the Court lacks personal jurisdiction over Mr. Culbertson and Culbertson Law Offices acted only through Mr. Culbertson, then the Court lacks personal jurisdiction over Culbertson Law Offices.

Second, with respect to Mr. Smith, the Complaint does not allege that Mr. Smith ever had any contact at all with the forum state. The Complaint does not even allege that Mr. Smith contacted Mr. Edwards by phone or by mail. Construing every allegation in the Complaint as true and viewing those facts in the light most favorable to Mr. Edwards, the Court still cannot conclude that it might possibly have personal jurisdiction over Mr. Smith.

As Mr. Edwards points out, however, Rule 12(h)(1) of the Federal Rules of Civil Procedure provides that the defense of lack of personal jurisdiction is deemed waived if a party does not affirmatively assert it. Neither "Culbertson Law Offices" (either on its own behalf or through Mr. Culbertson) nor Mr. Smith raised the issue of lack of personal jurisdiction until Culbertson Law Offices, through Mr. Culbertson, submitted its tardy response to Plaintiff's default motion. Under these circumstances, it is not entirely clear whether the Court may raise the issue of personal jurisdiction *sua sponte* or whether the Court is bound to accept Mr. Edwards' contention that the Court does actually have personal jurisdiction.

Ultimately, the point is academic because, even if the Court were to conclude that personal jurisdiction were not a bar to Mr. Edwards claims, the Court concludes that the facts asserted in the Complaint do not allege a claim under RICO as against Culbertson Law Offices or Mr. Smith. In order to demonstrate a violation of RICO, a plaintiff must establish: (1) the existence of an enterprise; (2) defendant's association with the enterprise; (3) defendant's participation in predicate acts of racketeering; and (4) defendant's actions constitute a pattern of racketeering activity. *United HealthCare Corp. v. American Trade Ins. Co., Ltd.*, 88 F.3d 563, 570 (8th Cir. 1996) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). Here, Mr. Edwards asserts that Culbertson Law Offices is the "enterprise" for purposes of RICO liability. However, the enterprise, for purposes of a RICO claim, must be distinct from the party named as a defendant. *United States v. Turkette*, 452 U.S. 576, 583 (1981); *United HealthCare*, 88 F.3d at 570. Accordingly, Mr. Edwards cannot assert a RICO claim against Culbertson Law Offices.

With respect to Mr. Smith, to the extent that Mr. Edwards has met the requirements of pleading a RICO violation, the acts committed by Mr. Smith did not, on their face, do any damage to Mr. Edwards. Mr. Edwards suggests that the bankruptcy court was defrauded, that

Ms. Deisz's ex-husband was defrauded, that the Gossetts were defrauded, and that the probate court was defrauded with respect to the execution of the Maltbie estate (because the probate court was not informed of Mr. Culbertson's conflict of interest regarding the sale of the real property). But the alleged activities do not constitute a harm to Mr. Edwards. Mr. Edwards seems to suggest that, as a beneficiary of the Edwards estate, he has some residual right to improvements to the Pitkin Avenue house. However, the allegedly fraudulent transfer of the Pitkin Avenue house from the Maltbie estate heirs to Mr. Smith did not reduce the value of the Pitkin Avenue house and it did not place the value of the house any farther beyond the reach of the Edwards estate. In other words, no matter how devious, and possibly illegal, the sale of the Pitkin Avenue house may have been, it did not affect Mr. Edwards' rights at all.

Given that the Complaint does not describe a factual predicate for RICO claims against either Mr. Smith or Culbertson Law Offices, the Court will not enter default judgment on those claims. Moreover, in the absence of the RICO claims, this Court lacks subject matter jurisdiction over the remaining claims alleged in the Complaint. Specifically, the jurisdictional amount for diversity jurisdiction, $75,000, has not been met.

Given the apparent lack of personal jurisdiction over the remaining defendants, the failure of the Complaint to allege a sufficient factual predicate for RICO liability as against the remaining defendants, and the Court's lack of subject matter jurisdiction over the state statutory and common law claims, the Court declines to grant default judgment and, instead, dismisses the Complaint without prejudice.

The Court's decision with respect to the Complaint should not be construed as tacit approval of the actions allegedly taken by the Defendants. Many of the activities described in the Complaint may have, at one point, been actionable, some possibly even criminal. At a

minimum, the conduct of Mr. Culbertson, as described in the Complaint, raises some serious ethical concerns. However, the law does not allow every court to provide a remedy for every wrong. Here, issues of jurisdiction preclude this Court from entering default judgment against these Defendants on these claims. The Court's order reflects only those jurisdictional infirmities of Mr. Edwards' Complaint. Indeed, in light of the ethical concerns raised by Mr. Edwards and in anticipation of the likelihood that Mr. Edwards will pursue an ethical grievance against Mr. Culbertson, the Court will forward a copy of this order to the Supreme Court of Ohio's Office of Disciplinary Counsel. Thus, if Mr. Edwards chooses to pursue an ethical grievance against Mr. Culbertson, a record of this litigation will be on file with the appropriate agency.

For the reasons stated, **IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Default Judgment (Doc. No. 36) is **DENIED**; and

2. The Complaint is **DISMISSED WITHOUT PREJUDICE.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: December 7, 2001

DONOVAN W. FRANK
Judge of United States District Court

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995